# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| AARON W. ARDOIN<br>    LA. DOC #237513<br>VS. | CIVIL ACTION NO. 16-00369<br><br>SECTION P<br><br>JUDGE REBECCA DOHERTY |
| DARRELL VANNOY | MAGISTRATE WHITEHURST |

## REPORT AND RECOMMENDATION

Pro se petitioner Aaron W. Ardoin, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on March 18, 2016. Petitioner attacks his 2010 conviction for Indecent Behavior with a Juvenile, Oral Sexual Battery and Aggravated Rape and sentence imposed thereon by the Thirteenth Judicial District Court, Evangeline Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Statement of the Case

On May 6, 2008, the petitioner was indicted by a grand jury on charges of Indecent Behavior with a Juvenile, in violation of La. R.S. 14:81(A)(1), Oral Sexual Battery, in violation of La. R.S. 14:43.3(A)(2) and Aggravated Rape, in violation of La. R.S. 14:42. On May 27, 2010, following a jury trial, he was found guilty as charged on all counts. He was sentenced on July 15, 2010, to life imprisonment at hard labor, for the aggravated rape, and to ten (10) years at hard labor for the oral sexual battery and indecent behavior with a juvenile, to run concurrently with each other and the life sentence.

On October 1, 2010, petitioner appealed his conviction and sentence to the Third Circuit Court of Appeals, arguing that: (1) "the trial court erred in failing to grant the Motion to Suppress Defendant's statements and in permitting the introduction at the trial of this case three statements given by the Appellant to the police over the course of two days as these statements were obtained in violation of the Appellant's rights set forth in the Fifth and Fourteenth Amendments to the United States Constitution;" and (2) "the trial court violated Appellant's Sixth Amendment right when it sentenced him to a sentence of ten years at hard labor under the enhanced sentencing provisions for indecent behavior with a juvenile based upon the findings of facts not reflected in the jury's verdict." [Doc. 1-4, p. 8] The Third Circuit Court of Appeals affirmed the conviction and sentence on March 9, 2011. *State of Louisiana v. Aaron W. Ardoin*, 58 So. 3d (La. App. 3 Cir. 3/9/11), 2010-1018. [*See also* Rec. Doc. 1-4, pp. 54-86.] On March 28, 2011, petitioner applied for writs of certiorari in the Louisiana Supreme Court [Rec. Doc. 1-4, pp 87-107]. On October 14, 2011, his writ application was denied without comments. *State of Louisiana v. Aaron W. Ardoin*, 74 So.3d 218 (La. 10/14/11), 2011-0653. [See also Rec. Doc. 1-4, p. 108.] He did not apply for certiorari in the United States Supreme Court. [Doc. 1, p. 3, ¶9(h).]

On November 28, 2011, petitioner filed an application for post-conviction relief in the Thirteenth Judicial District Court, Docket No. 75984-F, asserting the following: (1) "the conviction was obtained in violation of the constitution of the United States or the State of Louisiana, due to the ineffective assistance of counsel, when counsel failed to investigate prepare a defense. (See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);" and (2) "the conviction was obtained in violation of the constitution of the United States or the State of Louisiana, when Petitioner was denied his right to compulsory process to call witnesses in his behalf,

and denied the right to testify in his own behalf." [Doc. 1-5, p. 8.] The Court held an evidentiary hearing on October 13, 2013, and denied petitioner's application for relief. [Doc. 1-5, pp. 36-49.] Petitioner received the transcript of the evidentiary hearing containing the Court's ruling on March 17, 2014, and filed a Notice of Intent to Appeal on March 24, 2014. [Doc. 1-5, pp. 50-52.]

On April 17, 2014, Petitioner filed a writ application in the Third Circuit Court of Appeal, Docket No. KH 14-00420 [Doc. 1-5, pp. 54-68], which was denied on August 12, 2014 [Rec. Doc. 1-5, p. 69].

On August 27, 2014, Plaintiff filed a writ application in the Louisiana Supreme Court [Rec. Doc. 1-5, pp. 70-82]. On February 5, 2016, the writ was denied. *State ex rel. Aaron W. Ardoin v. State of Louisiana,* 14-KH-1915. [Doc. 1-5, pp. 83-84.]

Petitioner filed the instant petition for habeas relief on March 18, 2016. He makes the following arguments:

1. His 5th and 14th Amendment rights were violated when statements were taken without notifying him of his rights (*Miranda* violation);

2. His 6th and 14th Amendment rights were violated when he was denied effective assistance of counsel when counsel failed to investigate; and

3. His 6th and 14th Amendment rights were violated when he was denied the right to testify and denied the right to call witnesses.

The matter is now before the Court.

## Law and Analysis

**I. Standard of Review - 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas

3

claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5 Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II. Petitioner's Claims

### A. Claim One: Denial of Motion to Suppress Confession

Petitioner gave three statements to the police over a course of two days. Petitioner concedes that the "detectives, without doubt, received inculpatory statements from petitioner after a waiver sheet was signed regarding petitioner's Miranda rights." [Rec. Doc. 12, p. 7] He argues, however, that the detectives gave him the impression that he would be rewarded for his statements; specifically that the officers played "heavily towards petitioner's religious and other personal convictions and sympathies (avoiding causing harm to a young victim and to alleviate the need for the victim to testify in court)." *Id.* at 8.

A hearing on petitioner's motion to suppress the three statements given to police was held on May 13, 2010, pursuant to which the three statements and two Miranda waiver forms were introduced into evidence by the parties. The trial court, after hearing the testimony of Chief Gregory Dupuis and Detective Todd Ortis of the Mamou Police Department (the officers who participated in taking the petitioner's statements), denied petitioner's motion to suppress the statements. [Rec. Doc. 1-4, p.56)]

At that hearing, Dupuis testified that on February 3, 2008, petitioner was read his Miranda rights and he signed a form indicating that he understood those rights and he wished to waive those rights. Dupuis identified in court a standard Miranda rights form on which the defendant's signature was affixed in two places. The first section of the form signed by petitioner indicates that he understood his rights and the second section indicates that he was willing to talk to investigators. [Rec. Doc. 11-3, p. 71]

Petitioner gave the first of three recorded statements on February 7, 2008. He was not read

his rights immediately before giving his first recorded statement, but the following dialogue between petitioner and the officers demonstrates that he understood his rights as read to him on February 3, 2008:

> Todd: O.K. Whenever they picked you up, they advised you of your rights? They read you your rights?
>
> Aaron: Yea because Steven came pick me up from Reddell and brought me to the house. I stayed outside and that uh...
>
> Todd: But when the police came to talk to you, when the police arrested you, they read you your rights?
>
> Dupuis: When they booked you in that booking room, when they...
>
> Todd: They told you that you had the right to remain silent?
>
> Aaron: Oh yeah. He talked to me in the car and I told them, I had to tell him that they brought me in and he did.
>
> Chief: But you know, the point is, he read your rights to you, do you know your rights, or you need us to read them to you again?
>
> Aaron: Yes, yes, no, I understand.
>
> Chief: And you understand them?
>
> Todd: O.K.

[Rec. Doc. 11-3, p. 29]

On February 8, petitioner gave the second of three recorded statements to Chief Dupuis and Officer Todd Ortis. Again, petitioner was not read his rights prior to giving his statement, but Dupuis and Ortis ensured that petitioner understood his rights:

> Todd: OK. And uh, yesterday we had an opportunity to talk to you, right?
>
> Aaron: Yes sir.

6

> Todd: And we asked you a couple questions and you weren't quite sure or didn't have an answer for quite a few of them yesterday, right?
>
> Aaron: Naw, I really, that's not exactly, I had to think about it, but last night I sat there and thought about it and it comes up with common sense.
>
> Todd: So, uh, you want to talk to us again this morning?
>
> Aaron: Yeah.
>
> Todd: And I'm gonna ask you again, you understand your rights, right?
>
> Aaron: Yes, sir.

[Rec. Doc. 11-3 p. 49]

Later that same day, after asking to speak to the police, petitioner gave his final statement. [Rec. Doc. 11-3, p. 57] Prior to giving the third statement, petitioner signed a Miranda rights form, similar to the form he signed on February 3, 2008. [Rec. Doc. 11-3, p. 71]

The state appellate court found that Defendant waived his rights prior to giving his three statements and that there was no merit to the Defendant's argument that he was coerced by officer's during his three statements." [Rec. Doc. 1-4, pp. 70, 79]

The petitioner complains that Chief Dupuis constantly urged him to be a man and tell the truth, to spare the child from further medical, psychological and legal exams, and to save himself by confessing. Petitioner also maintains that Dupuis enticed him into confessing by telling him that he would try to work something out with the District Attorney. Finally, he contends that Dupuis misstated the strength of the State's case by telling him that the examining doctor reported that he and the victim had intercourse, when in truth, there was no conclusive finding of sexual intercourse.

A trial court's finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not supported by the evidence. *State v. Blank*, 2004-0204, (La.

7

4/11/06); 955 So.2d 90 (citing *State v. Benoit*, 440 S.2d 129, 131 (La. 1983); *State v. English*, 582 So.2d 1358 (La. App. 2nd Cir.1991), writ denied, 584 So.2d 1172 (La. 1991)). In the instant matter, the Third Circuit Court of Appeal found that considering the totality of the circumstances under which petitioner's statements were given, the officers' comments did not amount to coercion. [Rec. Doc. 1-4, p. 79] The Court found that "the record did not reflect that the petitioner's statements were the result of persistent and repeated interrogations by numerous skillful law enforcement officers, nor did the police taken heightened steps to obtain incriminating statements as so claimed by the [petitioner]." *Id.*

In *Blank, supra* at 106, the defendant complained that officers made "...several references to God, religion and his deceased mother." He claimed that this tactic caused him mental and physical duress, rendering his confession involuntary. Although the Court found the defendant's factual allegations to be accurate, the court found that he did not show that the State's conduct coerced his admission or rendered the confession involuntary. The *Blank* court stated that a confession is not rendered involuntary simply because officers appeal to a defendant's emotions and/or religious beliefs. *Id.* at 108. The court Louisiana Supreme Court held:

> A confession is not rendered inadmissible because officers exhort or adjure an accused to tell the truth, provided the exhortation is not accompanied by an inducement in the nature of a threat or which implies a promise of reward. In this case, the repeated references to Blank's deceased mother and the exhortation to tell the truth and take responsibility for his actions did not make the confession inadmissible.

*Id.*

The *Blank* court also explored the defendant's claims that his confession was illegally coerced, and therefore, inadmissible because officers badgered him by relentlessly exhorting him to

8

tell the truth and falsely suggested that they had forensic proof of his guilty, as petitioner herein did as well. The Court held, "Courts have routinely held that a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will "do what he can" or "things will go easier," will not negate the voluntary nature of a confession. *State v. Petterway*, 403 So. 2d 1157, 1159-60 (La. 1981); *State v. Magee*, 93-0643, pp. 3-4 (La. App. 3d Cir. 10/5/94), 643 So. 2d 497, 499; *State v. English*, *supra* at 1364.

The *Blank* Court held that in making a determination of whether a statement meets the knowing and voluntary threshold, "...a court considers the totality of the circumstances under which it is made, an any inducement is merely one factor in the analysis." *State v. Blank*, supra, at 103 (citing *State v. Lavalais*, 95-0320, p. 6 (La. 11/25/96), 685 So. 2d 1048, 1053 (La. 11/25/96); *State v. Lewis*, 539 So. 2d 1199, 1205 (La. 1989); *State v. Thomas*, 461 So. 2d 1253 (La. App. 1st Cir. 1984), writ denied, 464 So. 2d 1375 (La. 1985)).

This Court finds that a review of the totality of the record in petitioner's case reveals that he knowingly and intelligently gave up his right to remain silent and his right to have an attorney present during questioning; furthermore, his confession was voluntary and knowingly given, free of coercion. Thus, federal *habeas* relief is not warranted with respect to this claim.

B.  Claim Two: Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance by failing to interview and subpoena a witness whose identity was known to him and whose testimony was essential and material to his client's defenses.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of

9

counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5 Cir. 1997). The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5 Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5 Cir. 1998).

When applying the first prong of *Strickland*, federal courts do not second-guess the attorney's decision from the distorting perspective of hindsight; rather, they presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See *Strickland*, 466 U.S. at 689-90. The burden, therefore, is on the petitioner to show that counsel's representation fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5 Cir. 1994). In other words, the petitioner must demonstrate that counsel's representation was objectively unreasonable. *Strickland*, 466 U.S. at 688.

To establish prejudice, the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (internal quotation marks and citation omitted). Stated differently, a petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5 Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5 Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to

which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

### 1. Failure to Investigate and Prepare a Defense

Petitioner argues that the victim had previously "wrongfully accused other adults of improper sexual behavior with her which was proven to be untrue." [Rec. Doc. 1, p. 25] He asserts that trial counsel's failure to investigate the prior false allegations deprived him of a fair trial. *Id.*

"[A]n attorney must engage in a reasonable amount of pretrial investigation and 'at a minimum, . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case." *Bryant v. Scott*, 28 F.3d 1411, 1415 (5 Cir. 1994) (citing *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5 Cir. 1985)). "[C]ounsel's investigation does not have to uncover every conceivable fact to be reasonable." *Williams v. Stephens*, 575 Fed. App'x 380, 385 (5 Cir.

11

2014) (citation omitted). When assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5 Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Id.* at 361.

Complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness's testimony are largely speculative. *Gregory v. Thaler*, 601 F.3d 347, 352-353 (5th Cir. 2010) citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) and *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Bernard*, 762 F.3d at 473; *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985), *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984), *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Evans v. Cockrell*, 285 F.3d 370, 377(5th Cir. 2002). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Moreover, where the only evidence of a missing witness's testimony is from the defendant, courts view such claims with great caution. *Sayre*, 238 F.3d at 636 citing *Lockhart*, 782 F.2d at

1282, *Marler*, 777 F.2d at 1010, *Murray*, 736 F.2d 282, *Cockrell*, 720 F.2d at 1427, and *Buckelew*, 575 F.2d at 521. Thus, "[a] prisoner's bald conclusory assertion that [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Sayre*, 238 F.3d at 636 citing *Marler*, 777 F.2d at 1010. Further, to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness's testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander*, 775 F.2d at 602; *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

Petitioner fails to meet this standard. He does not show, by competent evidence, what the witness's testimony would have been, and petitioner's mere speculation is insufficient to justify habeas corpus relief. Petitioner fails to demonstrate through the presentation of competent evidence that the testimony of this witness would have been favorable to the defense or that the witness was available and willing to testify at trial. Accordingly, federal *habeas* relief is not warranted with respect to this claim.

### C. Claim Three: Denied Right to Compulsory Process to Call Witnesses on His Behalf and Right to Testify on His Own Behalf

Finally, petitioner argues that defense counsel should have been allowed to present testimony and cross-examine witnesses regarding the victim's allegations of prior molestation, which were allegedly subsequently found to be false, in order to impeach the victim's credibility. However, according to petitioner's brief, the allegation is actually that his attorney chose not to call the witnesses, discussed above in Part II. B., and his attorney advised him not to testify on his own behalf. The Court did not deny his right to call witnesses or to testify on his own behalf.

An evidentiary hearing was held on October 31, 2014, addressing counsel's decisions

regarding which witnesses to call at trial. Petitioner's trial counsel, Mrs. Kelly Tate, testified that certain witnesses were not called because of the basis of their possible testimony. She testified that she met with petitioner in preparing for trial and chose not to subpoena all witnesses originally provided by petitioner, of which there were over 20, as some could not help the Court, were not relevant and/or would have harmed petitioner's case. [Rec. Doc. 1-5, pp. 43-44]

Moreover, with respect to petitioner's claim that he was denied his right to testify on his own behalf, Mrs. Tate testified that she advised petitioner not to testify, because of his criminal history, his prior confession and her belief that he would make a "very poor witness." *Id.* at p. 45.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir.1994). When as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the United States Fifth Circuit has held that the "appropriate vehicle for such claims is a claim of ineffective assistance of counsel." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

Insofar as the claim is urged as a direct violation of the right to testify, petitioner has not shown that he is entitled to relief. A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Id.* (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), reh'g granted, 953 F.2d 1525 (11th Cir.), cert. denied, 506 U.S. 842, 113 S. Ct. 127, 121 L. Ed. 2d 82 (1992)). A habeas petitioner has the burden of proving that he was denied this constitutional

right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, No. H-97-0515, 2005 U.S. Dist. LEXIS 34938, 2005 WL 3263918 at *6 (S.D. Tex. 2005) (citing *Underwood v. Clark,* 939 F.2d 473, 475-76 (7th Cir. 1991)).

The *Underwood* court specifically noted the potential problems that were bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. *Underwood*, 939 F.2d at 475-76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* court recognized that such an assertion, even if made under oath, "is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary - and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify - to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." *Id.*, 939 F.2d at 475-76. This Court finds this analysis persuasive.

In the instant matter, there is no evidence to support petitioner's claims that his lawyer prevented him from testifying. At the evidentiary hearing before the state trial court, petitioner's trial counsel testified that she discussed petitioner's right to testify on his own behalf, thoroughly reviewing his criminal history, which included a felony conviction which she believed might harm his case. *Id.* at p. 44. There were also concerns that the State had a transcript of his confession that would give them an advantage and give them the opportunity to impeach petitioner on the stand. *Id.* at p. 45. Counsel testified that she opined that petitioner would make a "very poor witness" who

15

would not have handled cross-examination very well, which would have harmed his case and his credibility before the jury. *Id.*

Petitioner did not testify or present any evidence which would indicate that his trial counsel actually prevented him from testifying. Instead, he simply acquiesced to the sound advice given. That is not alone sufficient to prove a violation of his right to testify.

Accordingly, federal *habeas* relief is not warranted with respect to this claim.

### Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana, September 12, 2017.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**